**Harold CARTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–95–00223–CR, 14–95–00224–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 15, 1997.

Rehearing Overruled June 19, 1997.

Winston E. Cochran, Jr., Houston, for appellant.

Sandra J. Pomerantz, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

AMIDEI, Justice.

Harold Carter appeals his convictions by a jury for two counts of aggravated kidnapping and aggravated robbery. The jury assessed his punishment at thirty years imprisonment for each count. In eight points of error, appellant contends: (1) the evidence was legally insufficient to prove the use of deadly force or the use or exhibition of a deadly weapon in both counts and, (2) the trial court erred in overruling appellant's *Batson*[1] objection to the state's peremptory challenges of two black veniremembers. We affirm.

On February 20, 1994, at approximately 10:00 p.m., appellant stopped Jennifer Inman, Michelle Garcia, and Valerie Castro on a street. Appellant pointed a gun at the girls and told them to walk towards him. Sharon Inman, Jennifer's sister, was driving home from work and stopped when she saw Jennifer standing in the street; Sharon did not see appellant or the other girls at this time. Jennifer came up to the car and told Sharon to open the car door. Appellant then came over and pointed his gun at Sharon's head while holding Jennifer by her hair and pushing her into Sharon's car. Appellant then told Michelle and Valerie to get in Sharon's car and he then got in after them. Appellant ordered Sharon to drive to Durkee Elementary School. After Sharon parked her car at the school, appellant made Jennifer, Michelle and Valerie get in the trunk of the car. Appellant then ordered Sharon to drive to Northline Park with the three girls in the trunk. When they arrived at Northline Park, appellant made Sharon get out of the car and appellant then sexually assaulted Sharon while holding a gun on her. Appellant then made Sharon walk back to the car and took her purse from her on the way. Appellant made Sharon get in the trunk with the other girls and then drove to a convalescent center. After parking the car, appellant ordered Valerie and Michelle out of the trunk. Appellant made Valerie and Michelle

walk to some nearby woods, where he then took their shoes and jewelry. Appellant then tied Valerie and Michelle and made them lie on their stomachs. Appellant then returned to the car for Sharon and made her follow him and observe the two girls lying on their stomachs with their hands and feet tied together. Appellant then took Sharon back to the car, made her get in the trunk with Jennifer, and drove around for a few minutes. Appellant then stopped at Northline Park and made Jennifer get out of the trunk and walk over to a shed behind a swimming pool. Appellant ordered Jennifer to take off her clothes. As she was getting undressed, appellant heard the car door shut. Sharon managed to escape from the trunk, got in her car, slammed the door, and drove to a nearby house where she called the police. When appellant heard Sharon slam the car door, he ran away. Appellant was subsequently identified by a photo spread and arrested. Appellant did not testify. The jury found appellant guilty of aggravated kidnapping and robbery of Sharon and Jennifer and not guilty of the same offenses to Michelle and Valerie.

In points of error one, two, three, four, five, and six, appellant contends the evidence is legally insufficient to show he used or exhibited a firearm in the commission of the offenses. Appellant argues the testimony shows appellant exhibited and used a "gun" but there was no proof that the "gun" was a genuine firearm. No firearm was recovered by the officers. Appellant argues he could have been bluffing the victims with a model, a replica of a gun, or a toy gun.

A .25 caliber automatic pistol, similar to the one used by appellant, was shown to the victims who identified it as being the type gun used by appellant. Sharon stated, "that's what was pointed at my head." Jennifer stated, "That's the kind of gun that I— that—it looks like the gun he had." Michelle stated appellant had "a gun" and told the girls, "... and he tells us to walk ahead of him or he'll shoot." Valerie stated appellant "had a gun and he had a bandana on his face" and he put the gun to Jennifer's head when they were in Sharon's car.

---

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

When reviewing the sufficiency of the evidence the appellate court will look at all the evidence in the light most favorable to the verdict or judgment. *Garrett v. State,* 851 S.W.2d 853, 857 (Tex.Crim.App.1993); *Houston v. State,* 663 S.W.2d 455, 456 (Tex. Crim.App.1984). In so doing, the appellate court is to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Ransom v. State,* 789 S.W.2d 572, 577 (Tex.Crim.App.1989), *cert. denied,* 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990). This standard is applied to both direct and circumstantial evidence cases. *Chambers v. State,* 711 S.W.2d 240, 245 (Tex. Crim.App.1986). In conducting this review, the appellate court is not to re-evaluate the weight and credibility of the evidence, but act only to ensure the jury reached a rational decision. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App.1993); *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

Appellant contends the indictments in the robbery and kidnapping charges contain the averment that the deadly weapon or deadly force used was a "firearm." Appellant argues the state was not required to allege firearm in order to charge appellant with aggravated robbery and aggravated kidnapping but since the state did allege a firearm, it must prove the descriptive matter as alleged.

Proof of the use and exhibition of a deadly weapon is an essential element of the offense of aggravated robbery. *Gomez v. State,* 685 S.W.2d 333, 336 ( Tex.Crim.App. 1985). Proof of the use of deadly force is an essential element of the offense of aggravated kidnapping. *Mason v. State,* 905 S.W.2d 570, 575 (Tex.Crim.App.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 717, 133 L.Ed.2d 670 (1996). Where the state alleges unnecessary matter which is descriptive of the essential elements of the crime, the state must prove the descriptive matter as alleged. *Gomez,* 685 S.W.2d at 336.

In *Wright v. State,* 591 S.W.2d 458, 459 (Tex.Crim.App.1979), the victim of a robbery testified that the appellant pulled a weapon which the victim described as a "gun," "revolver," and a "pistol." The appellant in *Wright* argued the state failed to prove that a "deadly weapon" was used which is an essential element of aggravated robbery. The *Wright* court held, "Testimony using any of the terms 'gun,' 'pistol,' or 'revolver,' is sufficient to authorize the jury to find that a deadly weapon was used." *Id.* In *Gomez,* 685 S.W.2d at 336, the appellant had been charged with aggravated robbery by using and exhibiting a deadly weapon, namely a firearm, as in this case. The evidence consisted of testimony of the victim that appellant used a revolver. The court found a revolver is defined as "a firearm with short barrel, to be held in firing with one hand; a deadly weapon" citing BALLANTINE'S LAW DICTIONARY (3d Ed.1969). *Id.* In *Gomez,* the court held, "a revolver is a firearm." *Gomez,* 685 S.W.2d at 336.

In *Benavides v. State,* 763 S.W.2d 587 (Tex.App.—Corpus Christi 1988, pet. ref'd), the appellant had been found guilty of aggravated robbery by the use of a firearm, as in this case. The appellant in that case argued the evidence was insufficient to show a firearm was used. The victim's testimony showed that appellant used a "gun" and that it was an "automatic." The *Benavides* court noted the state was required to prove the use of a firearm beyond a reasonable doubt when the indictment alleged the deadly weapon used by defendant was a firearm. The *Benavides* court stated:

> The factfinder, however, may draw reasonable inferences and make reasonable deductions from the evidence as presented to it within the context of the crime [citation omitted]. Absent any specific indication to the contrary at trial, the jury should be able to make the reasonable inference, from the victim's testimony that a "gun" was used in the commission of a crime, that the gun was a firearm [citations omitted]. Appellant's threatening the victim with the gun in itself suggest that it is a firearm rather than merely a gun of the non-lethal variety ... [citation omitted]. The added description of the gun in the present case as an "automatic" further negates any reasonable possibility that the

gun is not a firearm (citing *Gomez,* 685 S.W.2d at 336). *Id.* at 589.

In this case, the victims testified appellant threatened them with a "gun" and identified a .25 caliber automatic pistol as being the type gun appellant displayed in these offenses. In BLACK'S LAW DICTIONARY (5th ed.1979), "gun" is defined as a "portable firearm such as a rifle, pistol, revolver, shotgun, carbine, etc." We find the testimony of the victims that appellant used "a gun" similar to the .25 caliber automatic showed them at the trial, and threatened to shoot the victims if they did not do as he ordered, was sufficient to authorize a rational jury to find a "firearm" was used in the robbery charges and deadly force was used in the kidnapping charges. *Gomez,* 685 S.W.2d at 336; *Benavides,* 763 S.W.2d at 589. A firearm is a deadly weapon by definition under section 1.07(a)(11), Texas Penal Code (Vernon 1974) (now TEX. PENAL CODE ANN. § 1.07(a)(17) (Vernon 1994)). *Gomez,* 685 S.W.2d at 336. Appellant's points of error one, two, three, four, five, and six, are overruled.

In points of error seven and eight, appellant contends the trial court erred in overruling his *Batson* objection to the state's strikes of two African–American veniremembers as being racially motivated. The appellant objected to the state's strikes of six African–Americans as racial discrimination. On this appeal, he contends only two of these six jurors were struck for racial reasons. Appellant contends the prosecutor's explanation for her strikes constituted disparate treatment of persons with the same or similar characteristics. The prosecutor explained to the trial court that she struck all jurors employed in the medical field because they might require the state to produce medical proof of rape and the state did not have such proof. The state struck five jurors who were employed in the medical field; two were the African–American jurors and three were non-African-American. The prosecutor had intended to strike a sixth juror also employed in the medical field, but inadvertently failed to strike this non-African-American person.

A *Batson* inquiry entails a three-step process. First, the opponent of a per-emptory challenge must make out a prima facie case of racial discrimination. *Purkett v. Elem,* 514 U.S. 765, 766, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834 (1995); *Williams v. State,* 937 S.W.2d 479, 485 (Tex.Crim.App.1996). Then, the proponent of the strike must come forward with a race-neutral reason for the challenge. *Id.* Finally, if a race-neutral reason is given, the opponent of the strike shoulders the burden of proving intentional discrimination. *Id.* For the purpose of step two, a reason is deemed race-neutral so long as no discriminatory intent is inherent in the explanation given, even if the explanation is fantastic or implausible. *Id.* Whether the trial judge believes a proffered race-neutral reason is a step-three inquiry, and the opponent of the strike bears the burden of showing that the reason offered is merely a pretext for discrimination. *Id.* Essentially, what the Supreme Court is saying is that our review should be of the third step, that is, the trial court's decision whether the opponent of the strike has proved purposeful racial discrimination. Therefore, we are not to consider whether the race-neutral explanation is "persuasive or even plausible." *Purkett,* 514 U.S. at 768, 115 S.Ct. at 1771.

In this case, the prosecutor explained the reasons for striking *all* persons, regardless of race, because of their employment in a medical field. The employment information was obtained by the state from the juror information cards. The prosecutor stated, "I struck every person in the medical field because I do not have medical proof of rape and it's my experience that when you have anybody involved in any medical field, they want medical proof and so the others were struck...." Three of the five jurors struck were non-African-American and they were employed in the medical field. The two African–Americans struck were employed in the medical field. Appellant argues the prosecutor's use of juror information cards to classify all persons in the medical field as biased without questioning the jurors renders the state's strikes racially impermissible. Appellant did not offer the juror information cards used by the state and appellant into evidence, nor did he cross-examine the prosecutor about her reasons for the strikes, nor did he put on any

evidence to rebut the state's facially race-neutral explanation, nor did he otherwise show racial discrimination was a pretext for the state's strikes.

■■■■ "A defendant must present impeaching evidence to the trial court if he intends to rely on it later. An appellate court may not reverse a trial court's finding based upon information that was not introduced into evidence or elicited before the trial judge during the voir dire." *Vargas v. State* 838 S.W.2d 552, 557 (Tex.Crim.App. 1992). In *Vargas,* the appellant raised a similar challenge and argued that the prosecutor's strikes of three jurors demonstrated an assertion of a group bias without showing that the group trait applies to the challenged juror; that there was no examination or perfunctory examination of the challenged jurors; and that the given explanation had no rational relationship to the case on trial. The prosecutor's reasons for the strike of one juror, Clark, was "that in his experience people from the legal community were 'tough' on the state;" this reason was found "not facially unreasonable." *Id.* at 555. The reason given by the prosecutor in this case was that people in the medical field are more demanding of medical proof in rape cases. A strike of a registered nurse because the state believed she may recommend to other members of a jury that medical testimony should be introduced in a sexual assault case, when the state was not going to introduce any medical testimony, was held to be a sufficient race-neutral ground for the state's strike. *Emerson v. State,* 851 S.W.2d 269, 272 (Tex.Crim. App.1993). We find the reasons given by the state for the strikes in this case to be race-neutral.

Appellant has the burden to show purposeful discrimination on the part of the state. The *Vargas* court held, in pertinent part:

> While these reasons [given by the state] would seem stronger had the prosecutor individually questioned all of the stricken venirepersons, the reasons are not rendered racially impermissible simply because he did not do so. Defense counsel did not cross-examine the prosecutor or impeach him on any of his reasons, even when the prosecutor also mentioned white venirepersons whom he claimed he struck

for similar reasons as he did venireperson Porter. Defense counsel did not present the trial judge with any comparison, general or detailed, of unchallenged white venirepersons and the black venirepersons who were struck. There is nothing to show that the prosecutor's stated reasons were pretextual. These reasons are racially neutral on their face.

*Id.* at 556.

The juror information cards were not in evidence in the trial court in this case and cannot be the basis of comparison evidence. *Vargas,* 838 S.W.2d at 557. The burden of persuasion remains with the appellant to establish that a prohibited motive lies behind the state's use of a peremptory challenge. *Camacho v. State,* 864 S.W.2d 524, 528–29 (Tex.Crim.App.1993); *Tennard v. State,* 802 S.W.2d 678, 681 (Tex.Crim.App.1990). Appellant, having heard the prosecutor's race-neutral explanation in this case, presented nothing more to impeach or rebut the explanation. We conclude that the trial court's finding of racial neutrality in the striking of the two jurors because they were employed in a medical field was not clearly erroneous and that the finding is supported by the record. *Whitsey v. State,* 796 S.W.2d 707, 723 (Tex.Crim.App.1989) (opinion on reh'g).

Appellant further argues that the holding in *Purkett,* 514 U.S. at 766–769, 115 S.Ct. at 1770–71, as set out in this opinion, undermines *Batson* in allowing a trial court to accept a facially valid explanation for the state's strikes as race-neutral. Appellant argues that article 35.261, Texas Code of Criminal Procedure, was enacted before *Purkett* and should be applied to reject the *Purkett* reliance on the "facial validity" of the state's explanation for its strikes. Appellant cites no authority for this proposition and his argument is conclusory. This proposition in support of points of error seven and eight is overruled. *Heiselbetz v. State,* 906 S.W.2d 500, 512 (Tex.Crim.App.1995). Appellant's points of error seven and eight are overruled and the judgment of the trial court is affirmed.