**Donald Peter SUNBURY, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–98–01357–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 22, 2000.

Don Becker, Houston, for Appellant.

Peyton Z. Peebles, III, John B. Holmes, Houston, for State.

Panel consists of Justices MIRABAL, ANDELL, and DUGGAN.*

**OPINION**

MARGARET GARNER MIRABAL, Justice.

Appellant, Donald Peter Sunbury, pled guilty to robbery and proceeded to trial before the jury on punishment only. The jury assessed punishment at confinement for 15 years. On appeal, appellant seeks reversal and remand as to punishment only, asserting in a single issue that the trial court erred by excluding evidence offered by appellant showing he had been convicted of two prior robberies and sentenced in each. In an unusual twist, the State sought to suppress testimony about the two prior convictions. We reverse the

portion of the judgment imposing punishment.

**I. The Excluded Testimony**

**A. Motion in Limine**

Before voir dire, the trial court granted the State's oral motion in limine to exclude any mention of the outcome of two other robbery cases involving appellant. Both cases had been heard, within days of one another, by the same trial court as the appealed-from robbery.

Specifically, the State sought to exclude the sentences in the following two cases: (1) trial cause number 783483, in which a jury found appellant guilty of robbery and assessed punishment at 9 years confinement on October 28, 1998; and (2) trial cause number 783316, in which appellant pled guilty to robbery, and the trial judge assessed punishment at 20 years confinement on November 2, 1998.

At the start of testimony in the third trial that began November 3, 1998, the State reurged its motion, as follows:

STATE: As a matter of housekeeping, I again urge my motion in limine that [defense counsel] not allude [to], mention nor in any way question the witnesses as to what they have previously testified to in a prior trial or the fact that Mr. Sunbury has been previously found guilty or that he has previously plead guilty to one of these cases to the Court and that these are not final convictions and they are not necessary to be brought in front of the jury's attention and not proper.

TRIAL COURT: Of course, if he on cross-examination feels that there is a discrepancy he may certainly refer to a prior hearing but you must not refer specifically to previous trials or anything of that kind. You may, if you find a discrepancy, you may refer to a previous hearing in a general fashion.

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

The State then presented its case, showing appellant committed a string of eight robberies, including the robbery then on trial, during a two-week period from May 3 to May 16, 1998.

## B. Appellant's Evidentiary Request

Before appellant took the stand, his attorney requested that appellant be allowed to inform the jury that he had already been sentenced in two of the robberies. The trial court refused to permit this sentencing testimony.

Appellant asserts that he received a substantially harsher sentence because the jury was operating under the mistaken impression that he had not been punished for any of the robberies. Appellant repeatedly and clearly explained his trial strategy to the trial judge and objected to the exclusion of the evidence, demonstrated by the following:

> DEFENSE COUNSEL: We're going to have Mr. Sunbury take the stand and what we want to do is have Mr. Sunbury testify to the fact that he does have prior convictions in two of the cases, that were already heard in this case.
>
> First of all, we ask the Court to take judicial notice of the fact that Mr. Sunbury received nine years in one case, 20 years in another case, pursuant to Texas Code.
>
> . . . .
>
> DEFENSE COUNSEL: . . . [N]ot letting Mr. Sunbury tell the jury that he's already been punished in two of these cases is misleading to the jury in their attempt to decide what punishment is appropriate. . . .
>
> . . . .
>
> DEFENSE COUNSEL: . . . [It is] extremely misleading not to let the jury know what happened in two of the prior cases tried in this court, misleading to the jury, not enable them to arrive at appropriate sentence. We would like for him, when he's on the stand, to testify—the State will have a chance to cross examination, apprise the jury of

the fact that the convictions are not final.

> TRIAL COURT: What leave are you requesting?
>
> DEFENSE COUNSEL: Pursuant to the State's Motion in Limine that we be permitted to ask Mr. Sunbury about his previous cases, the disposition of those cases, and the fact that he has plead [sic] guilty on one, found guilty in another, and he's been sentenced in both cases, once by the Court and once by the jury, let the jury know exactly what he got. It would be greatly helpful to the jury, Judge.
>
> . . . .
>
> DEFENSE COUNSEL: One other thing. The State opened the door. The State introduced evidence not of convictions but the underlying crimes, which is doubly misleading to the jury. All these crimes, the fact that she brought in witnesses and proved up to two earlier offenses where he's been found guilty, pled guilty, and the jury has to find out what finally happened. . . .

## II. The Punishment Trial Evidence

During the two-day punishment phase trial, the State called 16 witnesses. The witnesses testified about the circumstances of the appealed-from robbery, and about seven other robberies committed by appellant. Appellant testified and admitted he committed six of the robberies.

Appellant committed the appealed-from robbery on May 13, 1998 at the Eckerd Drug store located at Irvington and Cavalcade in Houston. The 17–year–old cashier testified that appellant approached the counter and told her to put the money from her register into a bag. When appellant approached the register, he had a t-shirt folded over his arm and it appeared he was concealing a gun. The cashier stated that she was shocked and scared by the robbery, and was unable to return to work for three days. During cross-examination, the cashier acknowledged appellant

did not raise his voice or scream, and that he did not come over the counter toward her. During re-direct, the cashier described appellant as "polite."

The State's evidence about the seven other robberies showed each robbery occurred in much the same manner as the appealed-from robbery. All eight robberies occurred in Houston within a short time period, between May 3 and May 16, 1998, set forth chronologically as follows:

1. May 3, 1998: Subway Sandwich shop at I–45 and FM 1960;
2. May 10, 1998: Eckerd Drug store at FM 1960 and Kukyndahl;[1]
3. May 11, 1998: Eckerd Drug store at unspecified location;
4. May 13, 1998: **The appealed-from robbery;** Eckerd Drug store at Irvington and Cavalcade;
5. May 14, 1998: Eckerd Drug store at 11th and Yale;[2]
6. May 15, 1998: Eckerd Drug store at Hammerly and Gessner;
7. May 15, 1998: Walgreen Drug store at 5306 West 34th Street; and
8. May 16, 1998: MacFrugal's store on Long Point.

Appellant was arrested May 16.

Appellant's estranged wife, Ginger Sunbury, also testified on behalf of the State. Ginger stated appellant had hit her and slapped her on more than one occasion, and once he threw a steak knife at her back when she was holding their infant daughter. Ginger had obtained a protective order to keep appellant away from her. On cross-examination, Ginger acknowledged that appellant had agreed to sign the protective order, and that he had not been arrested when police responded to calls about the domestic disturbances.

During his own testimony, appellant, a then–43–year–old man, described a productive life until soon before his robbery spree. He stated that he came from a good family, had a good education, and graduated from high school. Appellant had earned his living in the construction business, beginning as a laborer and working his way up to superintendent of multi-million dollar projects. In 15 years, he had worked for five companies and had never been fired.

Appellant stated that he had been married twice and had two daughters—one from his first marriage in Atlanta and the other with his estranged wife, Ginger. He had paid $500 per month in child support for his daughter in Atlanta; he had always made the payments until six months preceding his arrest. Ginger had filed for divorce after he was arrested for the robberies and he was ordered to pay $800 per month in child support; however, he had not made any of those payments because he was in jail and could not earn any money there. Appellant agreed that he and Ginger had a bad marriage, but denied that he slapped or hit her.

Appellant testified that, with the exception of a 1985 arrest for the misdemeanor of public intoxication, he had never "been in trouble with the law" until the robbery spree. Appellant had a drinking problem most of his life, but had never been a "violent drunk." His alcoholism had become an increasing problem in the last few years. He also had occasionally used "recreational drugs." Appellant had periodically attended AA meetings and at one point had remained sober for two years, as well as five years at another time. He had also briefly entered two rehabilitation programs to overcome his drinking and drug problems.

Appellant said he took a major downturn when he used crack cocaine for the first time—approximately eight months before he committed the first robbery. Appellant explained that once he tried crack cocaine "he couldn't put it down." When using crack cocaine, he became in-

---

1. Appellant testified that he did not recall committing this robbery.

2. Appellant testified that he did not recall committing this robbery.

creasingly angry and irrational. He also started to spend all of his money on crack cocaine. Appellant quit his job on May 1, 1998. On May 3, he robbed the first store to get money for crack cocaine; he stopped on May 16, the day he was arrested. He had never committed a robbery before then. He gave the police a video-taped confession soon after he was arrested.

Appellant expressed remorse and embarrassment for the robberies. He said he had confessed to the robberies he could recall committing. He explained that all of the robberies were essentially unplanned, and that he had been using crack cocaine the whole time. Appellant did not use a weapon; he had a garden hose nozzle under the t-shirt. While in jail, appellant was attending AA meetings and taking college courses. He hoped the jury would let him have probation, but he understood if they sent him to prison.

During cross-examination, appellant admitted that he had lied by failing to tell the jury he had been arrested in Georgia for driving while intoxicated in 1985 and 1987. Also, in 1993, a charge of theft had been brought against him and then dismissed in Georgia.

Appellant acknowledged that he did not identify all of the robberies in his confession to the police, but he then explained that he confessed to all of the robberies he could recall. He further acknowledged that he scared all of his robbery victims. Finally, he acknowledged that he violated the protective order issued on behalf of Ginger by going to her residence.

On re-direct, appellant clarified that the 1985 DWI in Georgia was merely a traffic stop for which he paid a $500 fine. Appellant also clarified that he had made child support payments for five and one-half years and that he had only recently gotten into arrears.

Additionally, three character witnesses testified on behalf of appellant. James E. Shear, owner of Shear Construction Com-pany and one of appellant's former employers, stated appellant was a good worker and that he would rehire him. Appellant had worked for him twice—once as a laborer, and most recently as a supervisor for two years. Mr. Shear had known appellant, appellant's parents, and appellant's siblings for 15 years. Mr. Shear lived near appellant's parents. Mr. Shear was surprised by appellant's robberies; he found them "hard to believe."

A fellow supervisor when appellant worked for Shear Construction Company testified that appellant was a good worker and a good supervisor. Also, the supervisor and appellant had attended AA meetings together.

Jim Sunbury, appellant's brother, testified they were raised in a "very, very warm and nice home life with two loving parents that supplied us with all [of] our needs and shelter and took care of us and it was, it was [a] very loving family." Appellant had always been hard working. He had never known appellant to be violent. Appellant was a nice person who had helped people. Jim had noticed a change in appellant in the past year, especially when appellant's marriage to Ginger deteriorated. Appellant seemed despondent. Jim had known his brother abused alcohol and believes he is an alcoholic, but had been unaware that he had used drugs.

The defense also called a court liaison officer, who testified about community supervision in general terms.

Following the two-day punishment trial, the jury assessed punishment at confinement for 15 years. The trial court later granted the State's motion to cumulate sentences, ordering that the 15–year sentence would begin to run after appellant had served the sentences in the two earlier robbery convictions.

### III. Testimony Regarding Sentences in Other Robberies

As stated above, appellant sought to testify that he had already been convicted

and sentenced in two of the robberies on which evidence was heard. In a single issue, appellant asserts that the trial court erred by refusing to permit this sentencing testimony.

## A. Standard of Review

We review a trial court's evidentiary rulings under an abuse of discretion standard. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997); *Pierre v. State*, 2 S.W.3d 439, 442 (Tex.App.—Houston [1st Dist.] 1999, pet. ref'd). We recognize that a trial court must be given wide latitude to admit or exclude evidence. *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim.App.1992); *Pierre*, 2 S.W.3d at 442. If the trial court's evidentiary ruling is within the zone of reasonable disagreement, we may not disturb its ruling. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990).

## B. Analysis

Section 3(a) of article 37.07 of the Code of Criminal Procedure, provides in relevant part:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered *by the state and the defendant* as to *any matter the court deems* **relevant to sentencing,** including *but not limited to* the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, any other *evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed* by the defendant or for which he could be held criminally responsible, *regardless of whether he has previously been* charged with or *finally convicted* of the crime or act.

Tex.Code Crim.P.Ann. art. 37.07, § 3(a) (Vernon Supp.2000) (emphasis added). The State explained to the trial court that because appellant had not been "finally convicted" of the two robberies previously tried (in light of the fact that the judgments had just been entered during the week before the trial in the present case), the State would not attempt to introduce evidence of the prior convictions. Rather, the State put on extraneous offense evidence to prove beyond a reasonable doubt that appellant had committed those two robberies, as well as the five other robberies that had not yet been tried to judgment. Appellant did not object to the State proceeding in this way. Rather, appellant objected only to the trial court's refusal to allow appellant, in rebuttal, to put on evidence showing (1) that he had been convicted in two of the robberies, and (2) that as a result of the convictions, he had been assessed punishment of confinement in the penitentiary for 9 and 20 years, respectively.

The specific question presented for resolution is: When the trial court admits punishment evidence offered by the State to prove beyond a reasonable doubt that appellant committed a number of similar robberies within days of the robbery being tried, is rebuttal evidence offered by appellant to show the jury that he has already been assessed punishment for two of the other robberies a matter "relevant to sentencing" under section 3(a) of article 37.07?

In answering this question, we are guided by the recent case of *Mendiola v. State*, 21 S.W.3d 282 (Tex.Crim.App.2000), along with *Rogers v. State*, 991 S.W.2d 263 (Tex. Crim.App.1999). According to these cases, determining what is "relevant to sentencing" under section 3(a) of article 37.07 is a question of "what is helpful to the jury in determining the appropriate sentence in a particular case." *Mendiola*, 21 S.W.3d at 285; *Rogers*, 991 S.W.2d at 265. In both cases, the court noted that "deciding what punishment to assess is a normative process, not intrinsically fact bound." *Id.* Thus, in determining relevancy in the sentencing context, courts should consider "policy reasons—such as admitting the

truth in sentencing, giving complete information for the jury to tailor an appropriate sentence for appellant, and the policy of optional completeness—in determining whether the evidence should be admissible." *Mendiola,* 21 S.W.3d at 285.

In *Mendiola,* the defendant had been convicted of three counts of indecency with a child by sexual contact. 21 S.W.3d at 283. During the punishment phase, the State introduced extraneous offense evidence that appellant had also engaged in inappropriate conduct with another young girl. *Id.* In rebuttal, the defense unsuccessfully attempted to introduce evidence showing that, although the State indicted defendant for that extraneous offense, the State had then dismissed the indictment. *Id.* at 284. The Court of Criminal Appeals held that, in determining whether the rebuttal evidence should have been admitted as relevant to sentencing, the intermediate appellate court should have considered whether the rebuttal evidence would have been "helpful" to the jury in determining the appropriate sentence. *Id.* at 285.

In the present case, the State focused primarily on appellant's string of eight robberies, in a two-week period. All but one of its 16 witnesses testified about the robberies.[3] Appellant made it clear to the trial court that he was concerned that the jury was operating under the mistaken impression that he had not been punished for any of the robberies, and that the jury's lack of complete information would result in a harsher sentence. Considering the policy reasons enumerated in *Mendiola* at 21 S.W.3d 285, including the policy of

optional completeness, we conclude the excluded evidence would have been helpful to the jury in determining the appropriate sentence for appellant.[4]

█ Accordingly, we hold that the evidence of appellant's two prior robbery convictions was "relevant to sentencing" under article 37.07, section 3(a), and the trial court abused its discretion when it excluded such evidence.[5]

## IV. Harm Analysis

█ Having concluded the trial court abused its discretion, we must conduct a harm analysis. Tex.R.App.P. 44.2. The error in excluding evidence in this case is a non-constitutional error under Rule 44.2(b). Accordingly, we must disregard the error and affirm if the error did not affect appellant's substantial rights. Tex. R.App.P. 44.2(b); *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d at 271; *High v. State,* 998 S.W.2d 642, 644 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (op. on remand). "A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State,* 967 S.W.2d 410, 417 (Tex. Crim.App.1998).

The range of possible punishment for appellant's offense was between 2 and 20

---

3. Although Ginger Sunbury testified about domestic abuse, she testified briefly and almost incidentally in light of the non-stop robbery testimony.

4. We note this is not the only situation in which a defendant may be entitled to introduce evidence in rebuttal, while the State is not able to introduce the same evidence *against* the defendant. *See, e.g., Hardie v. State,* 807 S.W.2d 319, 321 n. 7 (Tex.Crim. App.1991) ("While we agree that evidence of an accused invoking his right to counsel may be admissible when offered by the defendant

to *rebut* an inference of guilt, as demonstrating sobriety by virtue of the defendant having the presence of mind to request an attorney in such a situation, the fact remains that evidence of a defendant exercising his right to counsel cannot be used *against* him.").

5. We note that the State would have been entitled to point out to the jury, through cross-examination, that the two convictions were not yet final, as well as the fact that the sentences were to run concurrently.

years confinement, plus a fine not to exceed $10,000. *See* Tex.Penal Code Ann. §§ 12.33, 29.02 (Vernon 1994). Appellant sought community supervision.

■ There was evidence that appellant was a hard-working individual—a good worker and a good supervisor in the construction field—until he developed a crack cocaine habit. In the two weeks after quitting his job, appellant committed a string of eight robberies, and he was arrested. Appellant had never before been arrested for a crime of violence, and character witnesses testified that he was not a violent person. The jury heard the details of the eight robberies, but they did not know appellant had already received sentences of 9 years confinement from a jury, and 20 years confinement from a judge, in connection with two of the robberies. The jury, unaware that appellant had been punished for any of the robberies, sentenced appellant to 15 years confinement (5 years short of the maximum).

After examining the record as a whole, we lack fair assurance that the error in this case did not influence the jury's assessment of punishment, or that it had but a slight effect. Accordingly, we sustain appellant's sole issue.

We reverse the portion of the judgment imposing punishment and remand to the trial court for another punishment hearing. The judgment of conviction remains intact, not having been appealed.