# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00423-CR
## NO. 03-01-00424-CR

**Mike Cruz Garza, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT
### NOS. 7114 & 7115, HONORABLE JOE CARROLL, JUDGE PRESIDING

Appellant was convicted of intoxication manslaughter and aggravated assault with a deadly weapon.[1] These charges arose out of an automobile collision. In one issue on appeal, he contends that evidence of the victim=s intoxication should have been admitted during the punishment phase of trial. We will affirm the convictions.

### Factual and Procedural Background

These offenses arose from a traffic accident that occurred about a mile east of Lampasas. The accident occurred about 9:30 p.m. during a light rainfall. As described by witness Jeremy Herring, appellant=s Jeep, traveling west, made a quick turn across all traffic lanes and collided with the left fender of

---

[1] Cause number 03-01-00423-CR is the appeal from the conviction for intoxication manslaughter, which involved the death of Martin Ybarra. *See* Tex. Pen. Code Ann. ' 49.08 (West Supp. 2002). Cause number 03-01-00424-CR is the conviction for aggravated assault, which involved injury to Johnny Ybarra. *See* Tex. Pen. Code Ann. ' 22.02 (a) (West 1994).

a Pontiac Sunbird traveling east. The Pontiac=s driver, Martin Ybarra (Ybarra), died. His passenger, his adult son John, was injured.

Appellant was tried by a jury in both the guilt-innocence and punishment phases. Punishment was assessed at twenty years and a $10,000 fine for intoxication manslaughter and fifteen years and a $10,000 fine for assault.[2] The trial court had granted the State=s motion in limine to prevent appellant from discussing the fact that Ybarra=s post-mortem blood test showed a blood alcohol level of .10. During guilt-innocence, however, appellant did ask John if he had been drinking and if it appeared to him that his father had. The son=s response to both questions was, ANo.@ In an off-the-record hearing before the punishment phase, appellant presented his request to introduce Ybarra=s blood alcohol level. The court overruled his request. Appellant made a bill of exception to preserve error. In one issue on appeal, he urges that the trial court erred in refusing to admit this evidence.

**Discussion**

The trial court has broad discretion in determining the admissibility of evidence, and its ruling should not be reversed on appeal absent a clear abuse of discretion. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991). A ruling that falls within the zone of reasonable disagreement cannot be disturbed on review. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

---

[2] Appellant had two prior convictions for driving while intoxicated.

Appellant argues that evidence of Ybarra=s blood alcohol level should have been admitted at punishment because the defendant may offer evidence during the punishment phase of trial as to Aany matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant@ and Athe circumstances of the offense for which he is being tried.@ Tex. Code Crim. Proc. art. 37.07, ' 3(a)(1) (West Supp. 2002). He asserts that the definition of relevance[3] as found in the Texas Rules of Evidence is not adequate in the context of the punishment phase of a criminal case. *See Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999) (definition Anot a perfect fit in the punishment context@). Instead, relevance is a question of Awhat is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case.@ *Id*. Under this broader theory, admissibility is a function of policy rather than relevance. *Mendiola v. State*, 21 S.W.3d 282, 285 (Tex. Crim. App. 2000). These policy concerns include: Aadmitting the truth in sentencing, giving complete information for the jury to tailor an appropriate sentence for appellant, and the policy of optional completeness.@[4] *Id*. at 285.

---

[3] Relevant evidence is that evidence Ahaving any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.@ Tex. R. Evid. 401.

[4] AWhen part of an act . . . is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act . . . which is necessary to make it fully understood or to explain the same may also be given in evidence . . . .@ Tex. R. Evid. 107.

Appellant argues only that the evidence of the victim=s intoxication was admissible to give the jury complete information about the offense to assist them in assessing a proper sentence. He urges that the evidence of the victim=s intoxication is not impermissible Anegative victim impact evidence.@ On the contrary, we conclude that this evidence falls squarely within that category.

*Victim Impact Evidence*

The purpose of victim impact evidence at the punishment stage is to assist the jury in assessing the accused=s personal responsibility and moral guilt in terms of the trauma or loss the accused=s actions caused. *See Miller-El v. State*, 782 S.W.2d 892, 896-97 (Tex. Crim. App. 1996); *Richards v. State*, 932 S.W.2d 213, 215-16 (Tex. App.CEl Paso, 1996 pet. ref=d). However, Anegative victim impact evidence,@ that is, evidence introduced for the purpose of showing that a defendant=s punishment should be lessened because of the victim=s character, is not permissible. In *Clark v. State*, 881 S.W.2d 682, 699 (Tex. Crim. App. 1994), the defendant sought to introduce evidence that the victim was not a person of good character. His theory was that the jury might find that the defendant was a greater threat to society if they believed he murdered a particularly valuable member of the community and that the jury might have placed less value on the victim=s life if they knew of her Atrue@ character. The court of criminal appeals rejected that logic and held that the trial court properly excluded the evidence. *Id.* at 699.

Similarly, in *Richards v. State*, 932 S.W.2d at 215, the defendant sought to introduce evidence that the victim=s character and reputation for peacefulness and law-abiding were bad. The defendant argued that he was entitled to introduce evidence that the victim=s death was not as much of a loss to society as his widow would like for the jury to believe. He asserted that one of his strongest arguments for mitigation of his punishment was that Athe deceased was no more a model citizen that the widow alleged [a]ppellant to be.@ *Id*. The court held that the trial court did not abuse its discretion in finding that the negative evidence Richards sought to introduce was not relevant to the issue of appellant=s personal responsibility and moral guilt. *Id* at 215-16.

**5**

Appellant sought to introduce evidence of Ybarra=s blood alcohol content. Appellant asserts this evidence is admissible to show the jury the Acontext@ of the offense so the jury has the complete picture. Appellant did not further articulate a reason for the admissibility of the evidence.

Appellant relies on *Sunbury v. State*, 33 S.W.3d 436, 438-42 (Tex. App.CHouston [1st Dist.] 2000, pet. ref=d). In *Sunbury*, appellant had committed eight robberies during a two-week Aspree.@ *Id*. at 438. At punishment, the state called sixteen witnesses who testified about the circumstances of the appealed-from robbery and about the other seven robberies. *Id*. In rebuttal, appellant sought to introduce evidence that sentence had already been imposed for two of the robberies. *Id*. at 440-41. The trial court excluded that evidence. On appeal, appellant argued that he received a substantially harsher sentence because the jury was operating on the mistaken impression that he had not been punished for any of the robberies. *Id*. at 442. The appellate court decided that the excluded evidence would have been useful to the jury and was Arelevant to sentencing@ because it completed the picture in front of the jury. *Id*.

The type of evidence in *Sunbury* differs from that which appellant sought sought to introduce here. That a defendant has already been punished for an offense that might be perceived by the jury as part of an overall Aspree@ is evidence related to the degree of the accused=s culpability and helps the jury properly assess punishment. The evidence completed the picture drawn by the State with regard to the other offenses. In contrast, appellant=s evidence, as shown by his bill of exceptions, simply showed Ybarra=s blood alcohol level. In other words, he argues that he should be punished less because the victim was intoxicated. This is Anegative victim impact evidence.@

**6**

As in *Sunbury*, the defendant in *Mendiola* sought to introduce evidence to meet the State=s evidence concerning other offenses. In *Mendiola*, the State introduced evidence of an indictment for a previous offense; the defendant sought to counter with evidence that the previous indictment had been dismissed. The trial court excluded the evidence of dismissal. 21 S.W.3d at 284. The Court of Criminal Appeals reversed and remanded for a post-*Rogers* reconsideration of admissibility. Again, the evidence in *Mendiola* was offered to complete or rebut the picture painted by the State with regard to the defendant=s other offenses, which is evidence relevant to his culpability. Neither *Mendiola* nor *Sunbury* involved a defendant attempting to introduce evidence concerning the *victim=s* character as is appellant in this case.

## Conclusion

In short, Athe language >any matter the court deems relevant to sentencing= does not mean that anything goes.@ *Brooks v. State*, 961 S.W.2d 396, 401 (Tex. App.CHouston [1st Dist.] 1997, no pet.). We hold that appellant=s proffered evidence was improper Anegative victim impact evidence@ and properly excluded by the trial court. We overrule appellant=s sole point of error and affirm the conviction on both causes.


David Puryear, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   August 30, 2002

Do Not Publish