Opinion issued April 17, 2008

 













In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00607-CR






ANTOINE ANTONIO BROWN, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 179th District Court

Harris County, Texas

Trial Court Cause No. 1032992






MEMORANDUM OPINION


 A jury found appellant, Antoine Antonio Brown, guilty of aggravated robbery. 
After the jury was unable to reach a unanimous verdict as to punishment, the trial
court declared a mistrial. A second jury was chosen and assessed punishment at 29
years' confinement. In two points of error, appellant contends that (1) the trial court
erred by admitting evidence of two extraneous offenses to show intent, and (2) the
evidence is legally and factually insufficient. We affirm.

BACKGROUND

 On July 4, 2005, Debra Hillhouse was working the morning shift as a manager
of a Diamond Shamrock gas station. She drove to a Shell gas station to check the gas
prices, and a woman (1) tapped on her window to ask for directions. Hillhouse glanced
up, and a man also approached the front of her vehicle. At this point, Hillhouse
looked around and noticed a white, four-door vehicle with two people inside. 
Appellant, dressed as a woman, stepped out the vehicle and made a gesture to the
other two people standing next to Hillhouse's car. Appellant shook his finger at the
two people near Hillhouse's car "like they weren't doing what they were supposed
to be doing." The man near the front of Hillhouse's car told the woman who had
asked directions to "[d]o what you're f------g supposed to be doing." The woman
then pulled out a gun, put it to the side of Hillhouse's head, and told Hillhouse that
if she did not give up all of her things, she would be killed. Hillhouse complied and
gave them her purse, wallet, and watch. After taking Hillhouse's possessions, the
man and the woman told her that she would be killed if she told anyone about this
incident because they now had all of her personal information. The man, the woman,
and appellant got in the white car and drove away.

 Later that day, police chased a white, four-door car with four suspects inside. 
The suspects ran from their car to hide in a heavily wooded area, but all four suspects,
including appellant, were apprehended. Appellant and one of his accomplices were
dressed as women. Hillhouse's personal property was recovered from the white,
four-door vehicle. Hillhouse correctly identified appellant in a photographic lineup.

 In the guilt-innocence stage of the trial, appellant objected to the State offering
evidence of two extraneous aggravated robbery offenses committed by appellant
within the same two-day period as the Hillhouse robbery.

SUFFICIENCY OF THE EVIDENCE


 In his second point of error, appellant contends that the evidence was legally
and factually insufficient to prove that (1) he participated in the robbery because he
was merely present at the scene and (2) a firearm was used during the commission of
the robbery.

Standard of Review

 We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We note that
the trier of fact is the sole judge of the weight and credibility of the evidence. 
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when
performing a legal sufficiency review, we may not re-evaluate the weight and
credibility of the evidence to substitute our judgment for that of the fact-finder. 
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any
inconsistencies in the evidence in favor of the verdict. Curry v. State, 30 S.W.3d 394,
406 (Tex. Crim. App. 2000).

 In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, i.e., that the
verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). We
note that a jury is in the best position to evaluate the credibility of witnesses, and we
are required to afford "due deference" to the jury' determinations. Marshall v. State,
210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

The Law

 A person commits robbery if, in the course of committing theft of property and
with intent to obtain or maintain control of the property, he intentionally or
knowingly threatens or places another in fear of imminent bodily injury or death. 
Tex. Penal Code Ann. § 29.02(a)(2) (Vernon 2003). The indictment alleged that
appellant committed aggravated robbery by exhibiting a deadly weapon, namely a
firearm, in the course of committing a robbery. See Tex. Penal Code Ann. §§
29.03(a)(2), 1.07(a)(17)(A) (Vernon 2003 and Supp. 2007). Appellant can be
criminally responsible through his own conduct or the conduct of another if he was
"acting with intent to promote or assist the commission of an offense" by soliciting,
encouraging, directing, aiding, or attempting to aid another person to commit the
offense. Tex. Penal Code Ann. §§ 7.01(a), 7.02(a)(2) (Vernon 2003). 

Party to an Offense

 Appellant argues that he was merely present at the scene and did not participate
in the robbery. However, the evidence viewed in light most favorable to the verdict
shows that appellant was a party to the crime. Hillhouse testified that she saw
appellant making gestures to his friends that made her feel as if something bad was
about to happen. She also testified that appellant appeared to be acting as a lookout
for the man and woman who approached her car. Additionally, the extraneous
offense evidence shows that appellant had the requisite intent to participate in this
offense. In both extraneous offenses, the victims testified that appellant snatched
their purses, and in all three instances, appellant was identified in a photographic
lineup, along with his accomplices, as parties to the crime. Also, Texas law has long
recognized that evidence of flight or escape may be admissible to reflect the
defendant's guilt if the evidence is relevant to the offense under prosecution. Burks,
227 S.W.3d at 148. The courts may look to the events before, during, and after the
commission of the crime to determine if the defendant was a party to the offense. See
Goff v. State, 931 S.W.2d 537, 545 (Tex. Crim. App. 1996). Here, appellant evaded
police and hid in the woods when he and his accomplices were tracked down by
police officers based on the description of the car and suspects that the victims gave. 
Property belonging to the victims was also found in the vehicle. Based on this
evidence, a rational jury could have concluded that appellant was a participant in this
offense.

 Viewing the evidence in a neutral light, we cannot say that the verdict seems
"clearly wrong and manifestly unjust," or is against the great weight and
preponderance of the evidence regarding whether appellant was a party to the offense. 
Although appellant testified that he was asleep during the robbery after taking seven
Xanax pills with alcohol, Hillhouse testified that she saw appellant get out of the car,
motion to his accomplices as if he were directing their actions, and act as their
lookout. The jury was entitled to believe Hillhouse and disbelieve appellant. See
State v. Ross, 32 S.W.3d 853, 854 (Tex. Crim. App. 2000).

 Accordingly, we hold that the evidence is legally and factually sufficient to
show that appellant was a party to the offense.

Use of a Firearm

 Appellant also argues that the evidence was legally and factually insufficient
to establish that a firearm was used because a firearm was never recovered. 
Specifically, appellant contends the indictment alleged that the deadly weapon used
was a "firearm," but Hillhouse identified it only as a "gun."

 Proof of the use and exhibition of a deadly weapon is an essential element of
the offense of aggravated robbery. Gomez v. State, 685 S.W.2d 333, 336 ( Tex. Crim.
App. 1985). However, when the State alleges that the deadly weapon is a firearm, it
assumes the additional burden of proving that a firearm was used. Id. at 336.

 In Carter v. State, 946 S.W.2d 507, 510 (Tex. App.--Houston [14th Dist.]
1997, pet. ref'd), the State alleged in the indictment that a deadly weapon,
specifically, a firearm, was used in the offense. The victims testified that the
defendant used a "gun," and that he threatened to shoot them if they did not comply
with his demands. Id. at 511. Additionally, the victims identified a .25 caliber
automatic pistol as being the type of gun that appellant used to threaten them. Id.
Based on this evidence, the court of appeals held that the evidence was legally
sufficient to show that a firearm was used in the commission of the offense. Id.

 Similarly, in this case, Hillhouse testified that appellant's accomplice put a
"gun" to her head and threatened to kill her if she did not give them her possessions. 
At trial, the prosecutor showed Hillhouse a firearm, which was used for
demonstrative purposes only. Hillhouse testified that the demonstrative weapon
accurately resembled the weapon that was used against her and that there was "no
doubt in [her] mind" that the weapon used against her was a "real weapon." Under
the reasoning of Carter, we hold that the evidence was legally sufficient to show that
the weapon used in the offense against Hillhouse was a firearm.

 Viewing the evidence in a neutral light, we cannot say that the verdict seems
"clearly wrong and manifestly unjust," or is against the great weight and
preponderance of the evidence on the firearm issue. Appellant points out that, on
cross-examination, Hillhouse admitted that she was not a "gun expert," and that she
did not know if the gun was real. She only knew that the gun was placed against her
head and that she was in fear for her life. Appellant himself testified that he saw one
of his codefendants throw a black and silver gun out of the car while they were being
chased by police, but that he "couldn't tell" whether the gun was real. There is no
evidence suggesting that the gun was a toy. See Brown v. State, 212 S.W.3d 851, 863
(Tex. App.--Houston [1st Dist.] 2006, pet. ref'd) (holding evidence factually
sufficient to show that firearm was used even though there was conflicting evidence,
and toy gun was later recovered).

 The evidence was legally and factually sufficient to show that a deadly weapon,
namely a firearm, was used in the offense.

 We overrule point of error two. 

EXTRANEOUS OFFENSES

 In his first point of error, appellant contends the trial court erred by admitting
evidence of three extraneous offenses. As part of the State's case-in-chief, the
prosecutor sought to admit three extraneous offenses to show appellant's intent to
commit robbery. Specifically, the State introduced evidence of the aggravated
robbery of of Lissette Rosette, the aggravated robbery of Maria Gutierrez, and the
aggravated assault of Christine Maranan. The first aggravated robbery was
committed against Lissette Rosette on July 3, 2005 at 1:30 am at a Wal-Mart parking
lot. The second aggravated robbery was committed against Maria Gutierrez on July
4, 2005 around 1:00 am at a Kroger parking lot. The aggravated assault was
committed against Christine Maranan on July 4, 2005 around 6:15 am at a Wal-Mart. (2) 

The Extraneous Offense Testimony 

 Lissette Rosette testified that she, her mother, her little brother, and her nephew
had been to a Wal-Mart late at night. When they returned to their car, a woman
dressed as a man tapped on the window. Rosette did not roll down the window. 
Appellant, who was also dressed as a woman, approached Rosette's mother as she was
getting into the car and asked for directions. When Rosette's mother tried to close the
door, appellant blocked it and then demanded that the women give him their purses. 
Another perpetrator--this one a man dressed as a man--approached the car with a
gun. Rosette handed her purse to appellant, but appellant and the man with the gun
kept demanding that Rosette's mother also surrender her purse. Rosette grabbed her
mother's purse and handed it to the man with the gun. Appellant, the man with the
gun, and the other man dressed as a woman then fled in a white, four-door car. Rosette
later identified appellant from a photo array as the man dressed as a woman who had
initially approached her mother and asked for directions.

 Maria Guttierez testified that on July 3, 2005, she went to visit some friends
after church and stayed until around midnight. She left with her three children and
two friends of her children. On the way home, Guttierez stopped at a Kroger store to
get some milk and cereal. She and the children returned to her car around 1:00 a.m.
on July 4th. As Guttierez was loading the groceries in her car, a white, four-door car
pulled up and three people got out. Two were men dressed as women. Gutierrez
identified appellant as one of the two men dressed as women. As they approached,
one of them asked for directions. Gutierrez noticed that appellant was swinging a
knife. Another man then placed a gun against Gutierrez's head and demanded her
purse. She indicated that it was on the seat, and appellant reached in and took it. The 
white car then moved, and the three people got back in and drove away. Gutierrez
later identified appellant from a photo array as the man dressed as a woman who was
carrying a knife and who took her purse.

Standard of Review 

 We review a trial court's evidentiary rulings under an abuse of discretion
standard. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); Pierre v.
State, 2 S.W.3d 439, 442 (Tex. App.--Houston [1st Dist.] 1999, pet. ref'd). We
recognize that a trial court must be given wide latitude to admit or exclude evidence. 
Theus v. State, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992); Pierre, 2 S.W.3d at 442. 
If the trial court's evidentiary ruling is within the zone of reasonable disagreement, we
will not disturb the ruling. Prible v. State, 175 S.W.3d 724, 731 (Tex. Crim. App.
2005); Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990); Sunbury
v. State, 33 S.W.3d 436, 441 (Tex. App.--Houston [1st Dist] 2000, no pet.). 
Conversely, if the trial court's ruling "is so clearly wrong as to lie outside that zone
within which reasonable persons might disagree," then we must reverse for abuse of
discretion. Burks v. State, 227 S.W.3d 138, 147 (Tex. App.--Houston [1st Dist.]
2006, pet. ref'd) (quoting McDonald v. State, 179 S.W.3d 571, 576 (Tex. Crim. App.
2005)).

Rule 404(b)

 Evidence of other crimes, wrongs, or acts is not generally admissible to prove
character conformity, but may be admissible for other purposes, such as proof of
motive, opportunity, intent, or absence of mistake or accident. Tex. R. Evid. 404. 
Extraneous offense evidence may become admissible to prove intent only if the intent
required for a conviction for the primary offense is a contested issue in the case. 
McGee v. State, 725 S.W.2d 362, 364 (Tex. App.--Houston [14th Dist.] 1987, no
pet.). 

 Appellant argues that, at the point in the trial when the extraneous offense
evidence was admitted, appellant's intent was not yet an issue because he had not yet
testified. Intent can be characterized as a contested issue if (1) the required intent for
the primary offense cannot be inferred from the act itself or (2) the accused presents
evidence to rebut an inference that the required intent existed. Id. It is true that, as
appellant argues, he had not yet testified in such a way as to rebut an inference that the
required intent existed. However, his questioning of Hillhouse clearly raised the
defensive issue of his lack of intent. During cross-examination of Hillhouse, the
following exchange took place:

 [Defense counsel]: Now, Ms. Hillhouse

 [Hillhouse]: Yes, ma'am.

 [Defense counsel]: --you state that you saw Mr. Brown get out of the
car.


 [Hillhouse]: Yes, ma'am.

 [Defense counsel]: When you saw him get out of the car, you're saying
he stood right there by the door, or where did he go?


 [Hillhouse]: He stayed at the door with the door open.

 [Defense counsel]: And he didn't say anything to you; is that correct?

 [Hillhouse]: No, ma'am. He was -- no, ma'am, he did not.

 [Defense counsel]: Could you hear anything he said?

 [Hillhouse]: No, ma'am.

 [Defense counsel]: Do you know if he could have been motioning for the
other two to come on back to the car?

 [Prosecutor]: That would call for speculation, Judge.

 [Trial court]: Sustained.

 [Defense counsel]: Well, you didn't hear him say anything?

 [Hillhouse]: No, ma'am, I did not.

 . . . . 

 [Defense counsel]: Did you see Mr. Brown with any type of weapon?

 [Hillhouse]: No, ma'am.

 [Defense counsel]: So, its safe to say you don't really know his purpose
for getting out? You did see him get out of the car? He never left the
door? 


 [Hillhouse]: No, ma'am. I don't know what his purpose was, no, ma'am. 


 By questioning Hillhouse about appellant's "purpose" in getting out of the car,
appellant was suggesting that he had a "purpose" other than a criminal intent to
participate in a crime. Furthermore, a defendant need not raise his defensive issue in
his case-in-chief before the State is permitted to introduce extraneous offenses under
Rule 404(b). See Powell v. State, 63 S.W.3d 435, 439 (Tex. Crim. App. 2001)
(holding that defensive theory could be raised in opening statements and cross-examination of complainant, thereby permitting State to introduce extraneous offenses
during case-in-chief). 

 Appellant also argues that the extraneous offensives had no relevance other than
to show character conformity. Appellant claims that the "extraneous offenses were not
so similar to the [charged] robbery that the jury could infer Appellant's intent and
involvement in [this] case." We disagree.

 To show intent from extraneous offenses, the courts require only that the facts
of the charged offense and the extraneous offense be substantially similar, not exact. 
See Johnson v. State, 932 S.W.2d 296, 302 (Tex. App.--Austin 1996, pet. ref'd)
(citing Robinson v. State, 701 S.W.2d 895, 898 (Tex. Crim. App. 1985). Sufficient
similarity may be shown by proximity in time and place or by a common mode of
committing the offense. Phat Van Bui v. State, 68 S.W.3d 830, 837 (Tex.
App.--Houston [1st Dist.] 2002, no pet.). The Gutierrez and Rosette robberies were
substantially similar to the charged robbery because all of the robberies involved
similar facts: 1) each robbery began with a man dressed as a woman asking for
directions; 2) a man dressed as a man would then approach the car with a gun and
threaten the victims; 3) the getaway car was a white, four-door car; 4) at least two
males dressed as females were involved in each offense; 5) each offense occurred after
midnight in a parking lot in the same general vicinity; and 6) the offenses occurred
within a short period of time.

 Therefore, we hold that the trial court did not abuse its discretion in admitting
the extraneous offenses to show appellant's intent pursuant to Rule 404(b).

Rule 403

 Appellant also argues that, even if the extraneous offenses are admissible under
Rule 404(b), the evidence should be excluded on Rule 403 grounds because the
probative value is substantially outweighed by the danger of unfair prejudice. 

 Even if evidence qualifies for admission under rule 404(b), it may still be
excluded under rule 403 if the danger of unfair prejudice substantially outweighs its
probative value. Rogers v. State, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999). In
making this determination, a trial court should consider (1) how probative the
evidence of the extraneous offense is, (2) the potential for the extraneous offense to
impress the jury in some irrational but indelible way, (3) the amount of time the
proponent will need to develop the evidence, and (4) the proponent's need for the
evidence to prove a fact of consequence. Wyatt v. State, 23 S.W.3d 18, 26 (Tex. Crim.
App. 2000). Only a significant disparity between the degree of prejudice of the
evidence and its probative value will tip the balance toward requiring exclusion. Jones
v. State, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996).


 Probative Value

 The extraneous offense evidence was highly probative on the issue of
appellant's intent and rebutted his defensive theory that he was not serving as a
lookout, but had some other purpose in mind when he got out of the car. 

 Potential to Impress the Jury in Some Irrational Way

 Although extraneous offenses always possess the potential to influence the jury,
any impermissible inference of character conformity can be minimized through a
limiting instruction. Lane v. State, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996). In
this case, the trial court gave a limiting instruction before the evidence of the
extraneous offenses was presented to the jury and in the jury charge.

 Amount of Time to Develop the Evidence

 The State presented the extraneous offense evidence through the testimony of 
several witness, which took some time.

 Proponent's Need for the Evidence

 Finally, the State needed the extraneous offense evidence to show intent to
commit robbery. Appellant suggested through cross-examination that his actions in
getting out of the car and motioning toward the other perpetrators did not show an
intent to participate in the crime. He also testified during his case-in-chief that he was
passed out in the car during the robbery from drinking alcohol and taking Xanax. 
Thus, intent to commit robbery was a contested issue, and the extraneous offense
evidence was necessary to show an intent or scheme to rob victims at gunpoint in
parking lots in the early morning hours. Under these circumstances, any unfair
prejudicial effect does not substantially outweigh the probative value of the extraneous
offense evidence. 

 The trial court did not abuse its discretion in admitting the extraneous offenses
under rule 403 or 404. We overrule point of error one.

CONCLUSION

 We affirm the judgment.




 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.

Do not publish. Tex. R. App. P. 47.2(b).
1. 
 
2. ' 
 ' 
 '