Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
EDDIE DE LA ROSA,                                     )                  No. 08-04-00067-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  41st District Court
)
THE STATE OF TEXAS,                                   )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 20030D04082) 

O P I N I O N

            Eddie De La Rosa appeals his conviction of aggravated robbery. After finding Appellant
guilty, a jury assessed his punishment at imprisonment for a term of ten years. The trial court
included in the judgment an affirmative deadly weapon finding. We affirm.
FACTUAL SUMMARY
            On June 28, 2003, sixty-eight year old Charles Rankin walked out of a Rainbow store where
he had been shopping. Rankin got in his car and started it. As he waited for the air conditioner to
cool the car’s interior, a young man wearing a wool cap approached him on the driver’s side and
motioned for him to roll down the window. Rankin complied and the man asked for a ride to the
freeway. Rankin agreed and the man got in the car on the front passenger side. As they drove away,
Rankin looked down and saw that the man was pointing a chrome-plated automatic gun at his rib
cage. Rankin was familiar with weapons and looked at the bore “real hard” while it was being
pointed at him. He believed that the gun was a .25, .32, or .38 caliber. Because of his experience
with handguns, Rankin was positive that it was not a toy gun, pellet gun, or a BB gun. Rankin
started to ask what was going on but the man told him to shut up and drive. Rankin, who felt fearful
and anxious, did as he was told and drove towards Transmountain Road. When he got to a Phillips
66 gas station with people standing outside, he pulled in the driveway even though the robber had
not instructed him to do so. The man told Rankin to get out of the car so he stopped, put the car in
park, and turned off the engine. When Rankin refused to get out of the car, the man threatened to
shoot him. Rankin told him “I guess you’re gonna shoot me then.” After a brief but intense pause,
the man got out of the car and fled around the side of a concrete wall. Still fearful that he would be
shot, Rankin got out of the car and called 911 from a nearby Wal-Mart. Rankin, who felt he had
taken an unnecessary risk by refusing the robber’s demand, decided not to go home immediately
because he was afraid he would alarm his paraplegic wife when he told her what had happened. He
explained that he wanted to compose himself before talking to her. After waiting for the police for
approximately fifteen minutes, Rankin gave his name to the greeter at the front entrance and told him
that he was going to do some shopping. He never made contact with the police so he went home and
called the police again.


 
            Officer Robert Artalejo was dispatched to Rankin’s residence and arrived there
approximately ten minutes after the call. Artalejo spoke with Rankin who appeared scared and
upset. Artalejo made an aggravated robbery report based on what Rankin told him. Officer Mark
Fernandez processed Rankin’s car and dusted it for fingerprints. Fernandez found and lifted three
latent fingerprints on the passenger side door, including one on the interior door handle. Fernandez
submitted the latent fingerprints to the fingerprint examiner, Officer Douglas Lloyd. Upon
examination, Lloyd determined that only two of the three fingerprints were of evidentiary value. He
compared those two latent fingerprints with known prints and determined that they were made by
Appellant, whose prints were on file. The police department prepared a photo lineup for Rankin to
view but he was unable to identify Appellant as the person who robbed him. At trial, Rankin
explained he had focused more on the gun than the robber’s face. Based on the fingerprint evidence,
an arrest warrant was issued for Appellant. 
            Approximately three weeks after the robbery, Officer Charles Walker was investigating a
traffic collision. As part of his investigation, Walker asked for the names of all occupants in the cars
involved in the accident. Walker, who had been made aware of the arrest warrant for Appellant
earlier that day, discovered that Appellant was a passenger in one of the cars. After confirming the
arrest warrant, Walker called for backup and waited. When Appellant became nervous, Walker
decided to arrest him without waiting for backup. Walker put one cuff on Appellant and informed
him that he was being arrested for aggravated assault and aggravated robbery. Appellant threw his
arms up, pushed Walker and attempted to take off. Walker held on to the cuff that had been secured
but he lost his grip and let go. Appellant fell to the ground and Walker jumped on him. Walked held
onto Appellant until backup officers arrived and then placed Appellant under arrest. 
            Appellant gave a voluntary statement to Detective Louis Saiz. Appellant told the detective
that he had been hanging around the Rainbow store for the purpose of finding a car to steal. He saw
an old man walk out of the store and go to his car. Appellant asked for a ride and the man agreed. 
As they drove, Appellant pulled out a gun and told the man to keep driving. When the man pulled
into the gas station parking lot, Appellant told him to get out, but the man instead told him to get out
of his car. Appellant got out of the car while it was still moving and ran to the Transmountain
Apartments where he threw the gun away. Before Appellant signed the statement, he told Saiz that
he wanted to add something. Appellant added a paragraph in which he stated that the gun he used
was a toy gun. Detective Saiz and his partner looked for the gun at the Transmountain Apartments
but could not find it. 
            A grand jury indicted Appellant for aggravated robbery. At trial, the court instructed the jury
on both aggravated robbery and the lesser included offense of robbery. The jury rejected Appellant’s
claim that he had used a toy gun in the commission of the offense and found him guilty of aggravated
robbery as alleged in the indictment. 
SUFFICIENCY OF THE EVIDENCE
            In his first two points of error, Appellant challenges the legal and factual sufficiency of the
evidence to sustain his conviction because the State failed to prove that he used or exhibited a deadly
weapon. Similarly, he contends in Point of Error Three that the evidence is insufficient to support
the deadly weapon finding.
Standards of Review
            In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991), overruled on
other grounds, Paulson v. State, 28 S.W.3d 570 (Tex.Crim.App. 2000). This familiar standard gives
full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh
the evidence, and to draw reasonable inferences from basic to ultimate facts. Jackson, 443 U.S. at
319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. We do not resolve any conflict of fact or assign credibility
to the witnesses, as it was the function of the trier of fact to do so. See Adelman v. State, 828 S.W.2d
418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991).
Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are
rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict.
Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor
of the verdict. Matson, 819 S.W.2d at 843. Further, the standard of review is the same for both
direct and circumstantial evidence cases. Geesa, 820 S .W.2d at 158.
            In reviewing the factual sufficiency of the evidence to support a conviction, we are to view
all the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). Evidence is
factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow
the verdict to stand, or the finding of guilt is against the great weight and preponderance of the
available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we must consider in
conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and
against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the fact finder’s determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. See id. In performing this review, we are to give due
deference to the fact finder’s determinations. See id. at 8- 9; Clewis, 922 S.W.2d at 136. The fact
finder is the judge of the credibility of the witnesses and may “believe all, some, or none of the
testimony.” Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Consequently, we may
find the evidence factually insufficient only where necessary to prevent a manifest injustice from
occurring. See Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App.
1997).
Elements of Aggravated Robbery
            A person commits robbery if, in the course of committing theft and with the intent to obtain
or maintain control of property, he knowingly or intentionally threatens or places another in fear of
imminent bodily injury or death. Tex.Penal Code Ann. § 29.02 (Vernon 2003). A person commits
aggravated robbery if he commits robbery as defined in Section 29.02, and he: (1) causes serious
bodily injury to another; (2) uses or exhibits a deadly weapon; or (3) causes bodily injury to another
person or threatens or places another person in fear of imminent bodily injury or death. Tex.Penal
Code Ann. § 29.03. A deadly weapon is defined as (1) a firearm or anything manifestly designed,
made, or adapted for the purpose of inflicting death or serious bodily injury; or (2) anything that in
the manner of its use or intended use is capable of causing death or serious bodily injury. 
Tex.Penal Code Ann. § 1.07(17)(Vernon Supp. 2004-05).
            The indictment alleged that Appellant, while in the course of committing theft and with the
intent to obtain and maintain control of property, to-wit: a motor vehicle, intentionally and
knowingly threatened and placed Charles Rankin in fear of imminent bodily injury and death by
using and exhibiting a deadly weapon, to-wit, a firearm. The application paragraph of the court’s
charge tracked the language of the indictment. 
Application of Law to the Facts
            Considering first the legal sufficiency issue, the jury had before it Rankin’s testimony that
the robber threatened to shoot him if he did not get out of the car and he was positive the gun being
pointed at him was a real gun, not a toy gun. Rankin described the gun as an “automatic” and
believed it was a .25, .32, or .38 caliber. Taking this evidence in the light most favorable to the
verdict, and excluding Appellant’s statement that the gun was a toy, a rational trier of fact could find
beyond a reasonable doubt that Appellant used or exhibited a firearm during the commission of the
robbery. See Edwards v. State, 10 S.W.3d 699, 701 (Tex.App.--Houston [14th Dist.] 1999), pet.
dismissed, 67 S.W.3d 228 (Tex.Crim.App. 2002)(there was sufficient evidence that the gun that
defendant used in the commission of a robbery was a “firearm,” and not a non-lethal BB gun, to
support conviction for aggravated robbery; there was evidence that defendant threatened victims with
gun, and two victims, one of whom stated that she was once a security guard and was familiar with
guns, testified that gun used in robbery resembled a Colt .45 handgun and not a BB gun); Carter v.
State, 946 S.W.2d 507, 509 (Tex.App.--Houston [14th Dist.] 1997, pet. ref’d)(victims’ testimony
that defendant used “a gun” similar to .25 caliber gun shown them at trial, and threatened to shoot
victims if they did not do as he ordered, was sufficient to authorize rational jury to find that a
“firearm” was used during the offense); Benavides v. State, 763 S.W.2d 587, 589 (Tex.App.--Corpus
Christi 1988, pet. ref’d)(evidence was sufficient to show that a firearm was used during robbery and
was thus sufficient to support conviction for aggravated robbery where victim testified that defendant
used a “gun” and that it was an “automatic”).
            In considering Appellant’s factual sufficiency argument, we consider his written statement
that he used a toy gun during the robbery. We also keep in mind that the factfinder may draw
reasonable inferences and make reasonable deductions from the evidence as presented to it within
the context of the crime. Benavides, 763 S.W.2d at 588-89. Here, the jury was free to believe that
Rankin, based on his experience, could recognize a real gun capable of causing serious bodily injury
or death. The evidence is not so weak that it cannot support the jury’s finding that Appellant used
or exhibited a firearm in the commission of the offense. Consequently, the evidence is factually
sufficient to support Appellant’s conviction. Because the jury found that Appellant was guilty as
alleged in the indictment, and the evidence is legally and factually sufficient to prove that Appellant
used a firearm during the commission of the offense, the trial court did not err by entering a deadly
weapon finding in the judgment. See Tex.Code Crim.Proc.Ann. art. 42.12 § 3g(a)(2)(Vernon
Pamph. 2004-05). Points of Error One, Two, and Three are overruled.
COMMENT ON FAILURE TO TESTIFY
            In Point of Error Four, Appellant complains that the prosecutor made two improper
comments on Appellant’s failure to testify. During closing argument, defense counsel attacked the
credibility of the victim and argued that the victim’s behavior both during the offense and afterwards
proved that Appellant had used a toy gun in the commission of the offense. She also argued that the
police department’s failure to conduct an exhaustive search for the weapon indicated that they knew
it was a toy gun. The State responded during rebuttal with the following argument:
[The prosecutor]: You know, from your common sense, somebody is not going to
come in when they’ve been caught for a crime and say, all right, I did it. I did it. 
And there’s no excuse. Send me to prison for life. 
 
You know, that’s not gonna happen. So what did he do when the detective gave him
a chance to give him an excuse? To make up something to minimize his
punishment?
 
The only thing he could say was, oh, that gun’s not real. That gun is a toy gun. I
wasn’t really robbing him. I was just using a toy gun to try to steal his car. And if
you look at the last sentence on [his statement], it was not my intention to hurt
anybody. I only wanted to take the man’s car. Oh, I’m not a bad person. I’m just a
thief. Just a car thief.
 
Think about it, folks. What does that do for his credibility. On the one hand, you
have a man who’s been in the military. You have a man who’s lived his 70 years on
this planet. A man who has children and grandchildren, great grandchildren. A man
who has stayed clean all his life.
 
On the other hand, you have an admitted thief, an admitted robber who’s telling you,
because I don’t want you to send me to the penitentiary, believe what I say. 
[Emphasis added].
 
[Defense]: I’m going to object, Your Honor. My client has not testified. My client
has not said those things. He’s threading [sic] on the Fifth Amendment and we
would request a mistrial.
 
[Court]: I’m going to sustain the objection as to your comments. I’m going to deny
the mistrial.
 
[Defense]: Could you give me a curing instruction, Your Honor?
 
[Court]: All right. Ladies and gentlemen, the defendant has an absolute right not to
testify. The fact that he has not testified in this case is no evidence by you that you
can consider. You cannot take that as fact or circumstance against him. You cannot
discuss it among yourselves. You cannot use it for any consideration in his case at
all. Proceed. 
 
[The prosecutor]: And folks, what I’m talking about -- what I’m talking about --
what the defendant has told you -- I’m talking about what he has told you in this
statement. 
 
            *****
 
[The prosecutor]: Let’s think about logic. When you got somebody -- if you got a
robber who uses a toy gun, he uses a toy gun -- why would you use a toy gun to begin
with to commit a robbery?
 
You use a toy gun because you’re hoping that if things do go bad, something does go
wrong, then you can produce the gun and say look, it was just a toy. Don’t throw me
in prison for life, right? But wait a minute. He didn’t produce the gun, did he? He
didn’t come up here and wave it around and say, look, it’s a toy. [Emphasis added].
 
[Defense counsel]: I’m going to object, Your Honor.
 
[Court]: Sustained.
 
[Defense counsel]: Fifth Amendment violation.
 
[The Court]: Sustained. The defendant has an absolute right not to testify.
 
[The prosecutor]: Folks, I’m not talking about the defendant, but you know the
defense can bring in weapons, too.
 
[Defense counsel]: I’m going to object at this time, Your Honor. We have no right
to provide a defense. We don’t have a right to bring witnesses. They have a right to
prove that Eddie committed this crime beyond a reasonable doubt. We have no
burden.
 
[The Court]: Sustained. The burden of proof is on the State. The burden of proof
is not on the defendant to produce any evidence at all.
 
[The prosecutor]: Folks, the fact is, you know as well as I do, somebody who pulls
off a robbery with a toy gun is going to keep that toy gun. It makes no sense if it’s
a toy that he’s going to throw it away. Why would you throw away a gun that you
used in a robbery? 

Applicable Law

            Proper jury argument includes four areas: (1) summation of the evidence presented at trial;
(2) reasonable deductions drawn from that evidence; (3) answers to opposing counsel's argument;
and (4) pleas for law enforcement. McFarland v. State, 845 S.W.2d 824, 844 (Tex.Crim.App. 1992).
In reviewing final arguments, we must consider the remarks at issue in the context of the entire jury
argument rather than isolated sentences. Denison v. State, 651 S.W.2d 754, 761 (Tex.Crim.App.
1983). Prosecutorial comment that refers to an accused’s failure to testify violates the accused’s
right against compelled self-incrimination. Canales v. State, 98 S.W.3d 690, 695 (Tex.Crim.App.
2003); see U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex.Code Crim.Proc.Ann. art. 38.08
(Vernon 2005). The comment must clearly refer to the accused’s failure to testify, and it is not
sufficient if it might be construed as an implied or indirect allusion. Id. The test is whether the
language used was manifestly intended or was of such a character that the jury would necessarily and
naturally take it as a comment on the defendant's failure to testify. Id. The reviewing court considers
the comment from the standpoint of the jury. See Swallow v. State, 829 S.W.2d 223, 225
(Tex.Crim.App. 1992). Arguments pointing to the lack of evidence that only the defendant could
personally supply through his testimony violates the defendant’s right against self-incrimination. 
See id. It is permissible for the prosecutor to comment on the defense’s failure to present evidence
from a source other than the defendant’s own testimony. See Fuentes v. State, 991 S.W.2d 267, 275
(Tex.Crim.App. 1999).
            Ordinarily, any injury from improper jury argument is obviated when the court instructs the
jury to disregard, unless the remark is so inflammatory that its prejudicial effect cannot reasonably
be removed by such an admonishment. Bower v. State, 769 S.W.2d 887, 907 (Tex.Crim.App. 1989),
overruled on other grounds, Heitman v. State, 815 S.W.2d 681, 685 n.6 (Tex.Crim.App. 1991); see
also Dinkins v. State, 894 S.W.2d 330, 356 (Tex.Crim.App. 1995); Jackson v. State, 745 S.W.2d 4,
15 (Tex.Crim.App. 1988). Only in the most blatant examples will an instruction to disregard fail
to cure any error. Dinkins, 894 S.W.2d at 356.
            Appellant first complains of the following argument: “On the other hand, you have an
admitted thief, an admitted robber who’s telling you, because I don’t want you to send me to the
penitentiary, believe what I say.” When the argument is viewed in context and from the jury’s point
of view, it is apparent that the prosecutor was summarizing Appellant’s statement which had been
admitted into evidence and was responding to the argument of defense counsel that Appellant was
guilty of robbery, but not guilty of aggravated robbery since he had used a toy gun. As such, the
comment is not an improper comment on Appellant’s failure to testify. Because the argument was
proper, it was unnecessary for the trial court to sustain the objection.
            Appellant next contends that the prosecutor then pointed out that Appellant had not produced
the toy gun used in the robbery. The State argues that Appellant failed to preserve error because he
did not request an instruction to disregard or move for a mistrial. We agree. To preserve any error
from improper jury argument, a party must object to the argument and pursue the objection until the
trial court rules adversely. Mathis v. State, 67 S.W.3d 918, 926-27 (Tex.Crim.App. 2002); Cockrell
v. State, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996); see Tex.R.App.P. 33.1. If the objection to the
argument is sustained, the defendant must request an instruction for the jury to disregard, and then
move for a mistrial. Cockrell, 933 S.W.2d at 89. Because Appellant did not pursue his complaint
about the prosecutor’s second argument to an adverse ruling, the issue is not preserved for our
review. Point of Error Four is overruled.
PUNISHMENT EVIDENCE
            In Point of Error Five, Appellant contends that the trial court erred by admitting evidence of
an extraneous offense during the punishment phase when Appellant had not been given prior notice
of the State’s intent to offer the evidence. The State responds that it was not required to give notice
because the extraneous offense evidence was offered in rebuttal after Appellant opened the door. 
During the punishment phase, Appellant offered evidence through his own testimony and
other defense witnesses that he was a good candidate for probation. He asked the jury to
suspend his sentence because he and his girlfriend, Chantel Perez, have a infant daughter.


 During
cross-examination of Perez’s father, the prosecutor established that Appellant was twenty-one years
old and Chantel was seventeen years old at the time of trial. When the prosecutor asked how old
they were when they began dating, defense counsel objected that she had not been given notice of
the State’s intent to elicit this evidence. The prosecutor replied that he had just learned from the
testimony of the defense witnesses that Chantel may have been only 16 years old when Appellant
began a sexual relationship with her. The court overruled the objection. The witness testified that
Chantel was born on November 17, 1986 and the child was born on December 22, 2003. The State
then established without objection that Chantel was 16 years old when the child was conceived. 
When the prosecutor asked, “So of necessity, they were sleeping together when she was 16 and he
was 20?”, the trial court sustained Appellant’s relevancy objection. 
            Under Article 37.07, § 3(a), evidence may be offered by the State and the defendant as to any
matter the court deems relevant to sentencing. Tex.Code Crim.Proc.Ann. art. 37.07, § 3(a)(1).
(Vernon Pamph. 2004-05). This includes extraneous offense and bad act evidence. Id. Upon timely
request by the defendant, the State must give notice of its intent to introduce extraneous offense
evidence at the punishment phase in the same manner required by Rule 404(b) of the Texas Rules
of Evidence. Tex.Code Crim.Proc.Ann. art. 37.07, § 3(g). The notice requirement applies only
to evidence offered during the State’s case-in-chief. The State is not required under either Code of
Criminal Procedure article 37.07, § 3(g) or Rule of Evidence 404(b) to provide Appellant with notice
of its intent to introduce extraneous offense evidence during cross-examination of defense witnesses
or when it is offered as rebuttal evidence. See Jaubert v. State, 74 S.W.3d 1, 4 (Tex.Crim.App.
2002). Because the trial court did not abuse its discretion in admitting the evidence, we overrule
Point of Error Five. Having overruled each point of error raised on appeal, we affirm the judgment
of the trial court.
July 7, 2005                                                                 
                                                                                    ANN CRAWFORD McCLURE, Justice
Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)