# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00393-CR

**Daniel Joseph Whitley, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
## NO. D-1-DC-07-301930, HONORABLE MELISSA YOUNG GOODWIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Daniel Joseph Whitley guilty of aggravated sexual assault, *see* Tex. Penal Code Ann. § 22.021 (West Supp. 2009), and assessed his punishment at sixty years' imprisonment and a $10,000 fine. In three issues, Whitley contends that the evidence is legally and factually insufficient to sustain the jury's verdict of guilt, and that the court erred in its charge to the jury. We will overrule these contentions and affirm the conviction.

## BACKGROUND

Whitley and the victim, P.N., met for the first time at a gas station where the victim was filling her car with fuel.[1] After approaching P.N. and talking with her for approximately fifteen minutes, Whitley and P.N. exchanged phone numbers and the two parted ways. Later that same day,

---

[1] The facts recited in this opinion are taken from the testimony and exhibits admitted at trial.

after exchanging several text messages with her, Whitley invited P.N. to his apartment that night to "hang out." After explaining to him that she had to bring her four-month-old son with her, P.N. agreed and later showed up at Whitley's apartment, where they talked and watched television for several hours until P.N. left at approximately 11:30 p.m.

Over the next couple of days, Whitley and P.N. exchanged more text messages and phone calls. Eventually, Whitley invited P.N. over to his apartment again. Similar to the first visit, Whitley and P.N. talked, watched television, and played with P.N.'s son, whom she had brought again. P.N. testified that Whitley flirted with her during the visit and suggested that they engage in sexual activity, but she thought Whitley was joking when he said these things and so she did not respond directly. P.N. also testified that she and Whitley did not engage in any sexual activity during this or the previous visit. P.N. left Whitley's apartment around midnight, after having been there for approximately five hours.

The parties continued communicating, either via text messages or phone calls, over the next couple of days, but did not meet again until one day when Whitley asked P.N. to come to his apartment after she got off work. P.N. testified that, about an hour into this visit, she and Whitley began arguing because Whitley was teasing P.N. about a traumatic sexual experience P.N. had endured as a child. P.N. testified that when she tried to leave Whitley's apartment, Whitley became angry, grabbed her, ripped her pocket, and kicked her down the stairs. P.N. eventually left and called the police immediately, but no charges were filed against Whitley as a result of this incident.

Whitley repeatedly called and sent text messages to P.N. after this incident apologizing for his actions. P.N. testified that after a few days of Whitley's messages and phone

2

calls, P.N. resumed contact with Whitley and took her son with her for another visit to Whitley's apartment. Similar to the previous evenings, Whitley and P.N. talked and watched television for several hours. During this visit, Whitley told P.N. that he loved her and repeatedly suggested they engage in sexual intercourse. P.N. testified that she did not respond to Whitley's declaration of love and that she and Whitley did not engage in any sexual activity despite his requests. Eventually, P.N. said that she needed to leave, but Whitley suggested that P.N. and her son spend the night at his apartment since it was already so late. P.N. agreed and, according to P.N.'s testimony, the three of them went to sleep in Whitley's bed around 1:00 a.m., with P.N's baby sleeping between the two adults.

A few hours later, in the early morning, P.N. woke when she heard Whitley get up from the bed and leave the room to use the restroom. P.N. testified that when Whitley came out of the restroom, he walked over to the bed, opened a night-stand drawer, and removed what P.N. identified as a "gun." P.N. stated that Whitley pointed the gun at her, holding it "[l]ike a police officer would," and told her to put her son on the floor and take her clothes off. P.N. resisted and pleaded with Whitley to stop. Whitley then grabbed her and started choking her with one hand, and threatened to kill her if she did not remove her clothing. P.N. testified that she struggled with Whitley, but that he eventually forced her onto the bed and sexually assaulted her while throttling her neck. After the sexual assault, Whitley went into the restroom and P.N. grabbed her things and her son and tried to leave the apartment. Whitley at first blocked the door, but allowed P.N. to leave after she promised not to tell anyone that Whitley had sexually assaulted her.

P.N. immediately called a friend—an ex-boyfriend and the father of her child—and, while "screaming and crying," told him that Whitley had sexually assaulted her. P.N.'s ex-boyfriend

3

testified that he told her to drive to a hospital, where he later met her. At the hospital, a Sexual Assault Nurse Examiner ("SANE nurse") examined P.N. and took samples from P.N.'s body as evidence of the sexual assault. The SANE nurse testified that when she examined P.N. the morning of the assault, P.N. complained of a sore throat, had two scratches on her back, and had a thin red line in her vaginal cavity, which the nurse testified was, in her experience, consistent with forcible sexual assault.

The Austin Police Department's ("APD") Forensic Unit tested the samples taken from P.N. at the hospital and determined that semen was present in the samples. At trial, APD's forensics examiner testified that Whitley could not be excluded as a contributor of the semen sample collected from P.N., and the probability that the sample came from an unrelated black male was 1 in 21.67 million.

P.N. also met with an APD officer at the hospital the morning of the sexual assault and, three days later, met with Detective Richard Jennings of APD's Sex Crimes Division. Detective Jennings testified that he took P.N.'s statement at that time and prepared an affidavit for a warrant for Whitley's arrest, which subsequently issued. Nine days after the sexual assault occurred and after Whitley had been arrested, Detective Jennings executed a search warrant at Whitley's apartment. Detective Jennings testified that when he arrived at Whitley's apartment to execute the search warrant, Whitley's mother and another woman were there "cleaning out the apartment." The APD did not locate a gun at Whitley's apartment.

The jury convicted Whitley of aggravated sexual assault and assessed his punishment at sixty years' imprisonment and a $10,000 fine. Whitley appeals.

## SUFFICIENCY OF THE EVIDENCE

In his first two points of error, Whitley argues that the evidence is legally and factually insufficient to support the conviction for aggravated sexual assault. Specifically, Whitley asserts that the State did not carry its burden to prove that he used or exhibited a deadly weapon—a firearm—during the commission of the sexual assault. *See* Tex. Penal Code Ann. § 22.021.

### *Standard of Review*

In reviewing the legal sufficiency of the evidence, we review all of the evidence in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Clayton*, 235 S.W.3d at 778. We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton*, 235 S.W.3d at 778. In conducting this review, we do not reevaluate the weight and credibility of the evidence, but act only to ensure that the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993).

In a factual-sufficiency review, we consider all the evidence in a neutral light, while giving due deference to the jury's determination. *See Sims v. State*, 99 S.W.3d 600, 604 (Tex. Crim. App. 2003); *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). Evidence is factually insufficient when it is so weak that the verdict seems clearly wrong and manifestly unjust, or when the verdict is against the great weight and preponderance of the evidence. *Watson v. State*,

204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

The jury, as the trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The jury may choose to believe or disbelieve any portion of the testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). The jury may also draw reasonable inferences from basic facts to ultimate facts. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). We may not reweigh the evidence and substitute our judgment for that of the jury. *Watson*, 204 S.W.3d at 414; *King v. State*, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000).

*Discussion*

To prove the offense of aggravated sexual assault as set forth in the indictment and jury charge, the State was required to establish that Whitley intentionally or knowingly caused the penetration of P.N.'s sexual organ by Whitley's sexual organ, without P.N.'s consent, and that Whitley used or exhibited a deadly weapon—a firearm— in the course of the same criminal episode.[2] *See* Tex. Penal Code Ann. § 22.021(a). A firearm is a deadly weapon, Tex. Penal Code Ann. § 1.07(a)(17) (West Supp. 2009), and is defined as "any device designed, made, or adapted to expel

---

[2] Whitley does not challenge the jury's findings that he intentionally or knowingly caused the penetration of P.N.'s sexual organ by Whitley's sexual organ without P.N.'s consent.

6

a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use," *id.* at § 46.01(3).

At trial, P.N. testified that Whitley sexually assaulted her and used a "gun" during the commission of the sexual assault. Regarding Whitley's use of a "gun" during the sexual assault, P.N. testified as follows:

A:      [Whitley] reached into the drawer, and I turned around and that's when he pulled it out.

Q:      Now, what brought your attention to the drawer?

A:      The noise.

Q:      Of the drawer opening?

A:      Yes.

Q:      What did he pull out?

A:      His gun.

Q:      How do you know it was a gun?

A:      Because of the way he held it.

Q:      How did he hold it?

A:      Like a police officer would.

Q:      Show the members of the jury.

A:      He just pointed it at me like that.

. . . .

Q:      Where was he pointing it at you, "he" being [Whitley]?

A:      My chest.

7

Q:     What was your reaction?

A:     My heart sank, just dropped in my stomach.

Q:     What did you think?

A:     I honestly thought he was going to kill me.

Q:     Were you scared?

A:     (Nodding)

Q:     Is that a "yes"?

A.     Yes.

. . . .

Q:     What else does [Whitley] say?

A:     Calling me the same cuss words, saying the same thing, telling me to take my clothes off.  And he said, bitch, I'm not playing with you.  If you don't take your pants off, I'm going to kill you.

Q:     Did you believe him?

A:     At that point, I did.

. . . .

Q:     Did you push him?

A:     Not when somebody is holding something like that at me, I wasn't going to push him.

. . . .

Q:     What was he doing with the gun?

A:     It was just laying on the bed now, because he's in control now because he's on top of me and he's pressing down on my throat and I can't breathe.

Q:     Were you looking at this gun?

8

A:     I was looking anywhere just trying to see, make sure my son wasn't waking up. Just all I could think about was him.

Q:     Is that why you didn't grab the gun?

A:     No. I wasn't going to do that.

Q:     Why?

A:     Because I felt like if I did, he could have just snapped my neck, he could have killed me.

. . . .

Q:     What did he do when he got off you?

A:     Went in the bathroom and wiped himself off and came back out, put his boxers back on, and I put my [pants] back on. I didn't put my underwear back on.

Q:     Where's the gun?

A:     It must have disappeared somewhere. I don't know where it went to then.

Q:     Were you looking for it?

A:     I wasn't looking for it, no.

Q:     What were you looking for?

A:     I was ready to go. My cell phone, my keys, and I grabbed my son and his bag, and I was ready to go.

Whitley asserts that this testimony, which is the State's only evidence that Whitley used or exhibited a firearm, was not legally or factually sufficient because, other than use of the word "gun," P.N. did not describe the gun—i.e., size, color, caliber, make, model, revolver, or automatic—did not testify that she had prior knowledge about firearms or had ever seen or held one up close, and did not testify the "gun" was a device manifestly designed to fire a projectile of any kind. We disagree.

9

A complainant's uncorroborated testimony alone is sufficient to support a conviction for aggravated sexual assault under section 22.021. *See* Tex. Code Crim. Proc. art. 38.07 (West 2007); *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978). Here, P.N. testified that Whitley pulled a "gun" out of the drawer and, holding it like a police officer would, aimed it at her chest and threatened to kill her. This testimony, coupled with her testimony that she thought Whitley was going to kill her when he pointed the "gun" at her chest, suggests that the object in Whitley's hand was a device capable of firing a projectile at her.

The jury may draw reasonable inferences and make reasonable deductions from the evidence as presented to it within the context of the crime. Absent any specific indication to the contrary at trial, the jury should be able to make the reasonable inference from P.N.'s testimony that Whitley used a "gun" in the commission of a crime and that the "gun" in question was a firearm as defined in the Penal Code. *See Carter v. State*, 946 S.W.2d 507, 510 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd) (citing *Wright v. State*, 591 S.W.2d 458, 459 (Tex. Crim. App. 1979) (testimony using any of the terms "'gun,' 'pistol,' or 'revolver,' is sufficient to authorize the jury to find that a deadly weapon was used")).

In support of his contention that the evidence is factually insufficient to support a finding that he used or exhibited a firearm during the commission of the offense, Whitley also points to P.N.'s testimony about how Whitley used his hands during the attack:

Q:     Did you do anything physical to him?

A:     I was grabbing his *hands* trying to pull his *hands* away from my throat and telling him to stop.

10

(italics added). Whitley argues that this testimony is inconsistent with the State's contention that he used or exhibited a firearm because it suggests that Whitley had nothing in his hands during the sexual assault—i.e., no firearm. But a review of P.N.'s testimony shows that Whitley had one hand around P.N.'s throat at first and then later was using both hands to choke her. When asked about where the gun was after she testified that he was using two hands to choke her, P.N. testified that the gun was "just laying on the bed" after Whitley had gained control over her. This testimony is not inconsistent. It is reasonable for the jury to have concluded that Whitley choked P.N. with one hand while he held the gun, placed the gun on the bed once he had control over P.N. and did not need the gun, and then used both hands to choke her during the remainder of the assault. Even if P.N.'s testimony was contradictory, a conflict in the evidence does not justify a new trial simply because an appellate court might disagree with the jury's resolution of the conflict. *Watson*, 204 S.W.3d at 417.

Whitley argues that the testimony is also inconsistent because P.N. does not explain what happened to the firearm after the assault and can only testify that the firearm "disappeared somewhere." But P.N. never testified that she looked for the gun and could not find it. Instead, in response to a question about the firearm's location after the sexual assault, P.N. stated that she did not know where it was, but that she was not looking for it because she was busy gathering up her child and possessions and trying to leave. Again, this testimony is not inconsistent with the contention that Whitley used a gun during the assault. It was reasonable for the jury to conclude that P.N. did not see the firearm after the sexual assault because she was not looking for the firearm or because she was focused on fleeing the scene of the sexual assault. Further, in light of Detective Jennings's testimony that he executed the search warrant on Whitley's apartment nine days after the sexual assault occurred and found two women "cleaning out [Whitley's] apartment," the jury

11

could have reasonably concluded that the gun was removed from the apartment after the sexual assault took place.

Analyzing the evidence in the light most favorable to the jury's verdict, we believe a rational trier of fact could have determined that the State proved beyond a reasonable doubt that Whitley used or exhibited a firearm during the sexual assault. Thus, the evidence is legally sufficient. We similarly hold that, viewing the evidence in a neutral light and taking care to avoid reweighing the evidence or substituting our judgment for that of the jury's, the jury's affirmative finding that Whitley exhibited a firearm during the commission of the offense is not contrary to the great weight and preponderance of the available evidence. The evidence is therefore factually sufficient to support Whitley's conviction for aggravated sexual assault.

We overrule Whitley's first and second points of error.

**CHARGE ERROR**

In his final point of error, Whitley contends that the trial court's charge to the jury was improper. Specifically, Whitley asserts that the trial court erred by including in the jury charge, over his objection, two phrases that were not supported by the evidence.[3] Whitley contends that the inclusion of those two phrases in the jury charge harmed him.

The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). The jury charge must allow the jury to determine the defendant's guilt in light of the evidence and

---

[3] The State contends that Whitley's counsel did not properly object to the phrases. From our review of the record, however, we are satisfied that the objections were timely and sufficiently specific.

12

the law. *Id.* Absent evidence to the contrary, we presume the jury followed the law provided by the charge. *Id.* In reviewing a jury charge, we must first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error is found, the standard for reversal depends on whether a timely objection was made in the trial court. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). If no proper objection was made at trial, reversal is only proper in the presence of an egregious harm. *Id.* If the error was the subject of a timely objection, as it was here, reversal is required upon a showing of "some harm." *Id*.

Whitley's first alleged charge error involves the serious-bodily-injury language included in the charge's abstract definition of aggravated sexual assault:

> A person commits the offense of Aggravated Sexual Assault if the person intentionally or knowingly causes the penetration of the female sex organ or another person by any means, without that person's consent; and
>
> (1) *causes serious bodily injury or attempts to cause the death of P.N. or another person in the course of the same criminal episode*;

(Italics added.) Although this definition is taken directly from the Penal Code, Whitley's counsel objected to the inclusion of the italicized language on the ground that there was no evidence presented at trial that Whitley caused serious bodily injury or attempted to cause the death of P.N. or another person in the course of the commission of the crime. Our review of the record confirms that the State presented no evidence supporting this language, nor does the State contend otherwise. Nevertheless, the trial court overruled Whitley's objection and included the phrase. The trial court, however, did not include the objectionable phrase in the application section of the charge; instead, the application section of the charge requires the jury to assess guilt based solely on factors presented

13

in evidence.  An abstract instruction on an extraneous element of aggravated sexual assault, without specific application to the facts of the case, does not authorize the jury to impose criminal responsibility on the basis of that element.  *See Mauldin v. State*, 628 S.W.2d 793, 796 (Tex. Crim. App. 1982) (holding that abstract charge on law of parties was not error because trial court's charge specifically required jury to find guilt based solely on defendant's own actions).  Accordingly, it was not error for the trial court to overrule Whitley's objection.

In contrast, the second phrase to which Whitley objected was included in the application section of the charge:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, [Whitley], on or about the 7th day of August, 2007, in the County of Travis, and State of Texas, as alleged in the indictment, did then and there intentionally or knowingly cause the penetration of the sexual organ of [P.N.] and the said [Whitley] did then and there by acts or words threaten to cause, or place, [P.N.] in fear that serious bodily injury would be imminently inflicted on [P.N.]. and said acts or words occurred in the presence of [P.N.], that a deadly weapon, to wit: a firearm, was used or exhibited during the commission of the aforesaid offense, and that the said [Whitley] used or exhibited the said deadly weapon *or was a party to the aforesaid offense and knew that a deadly weapon would be used or exhibited*, you will find the defendant guilty of the offense of Aggravated Sexual Assault and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

(Italics added.)  Whitley's counsel objected to the italicized language in the application because "there was no allegation of [Whitley] being a party."  We take this as an objection that there was no evidence that Whitley was a party to the offense—as opposed to the principal actor.  Our review of the record confirms that the State presented no evidence that Whitley was a party to the offense, nor does the State's brief suggest otherwise.  Thus, it was error for the trial court to include the phrase

14

in the charge. *See Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999)*; Maudlin*, 628 S.W.2d at 796. That error was harmless, however, because the evidence clearly supports Whitley's guilt as a principal actor. *See Ladd*, 3 S.W.3d at 564-65 (citing *Black v. State*, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986) ("Where the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless.")). In other words, because there was no evidence tending to show Whitley's guilt as a party, the jury did not rely upon the parties instruction in arriving at its verdict, but rather based the verdict on the evidence tending to show Whitley's guilt as a principal actor.

We overrule Whitley's third point of error.

## CONCLUSION

Because we find no reversible error, we affirm the trial court's judgment.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   July 14, 2010

Do Not Publish

15